Demetria CLARK, Appellant,

v.

**UNIVERSITY OF HOUSTON, Matthew Stewart and Jon Williams, Appellees.**

No. 14–96–00005–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 24, 1998.

Mark A. Hovenkamp, George M. Fleming, Houston, for appellant.

Stephen Ronald Keister, Austin, for appellees.

Before MURPHY, C.J., and YATES, AMIDEI, FOWLER and O'NEILL, JJ., En Banc.

## MAJORITY OPINION ON REHEARING EN BANC

LEE, Justice.

On consideration of appellees' motion for rehearing, we withdraw the majority and dissenting opinions of January 30, 1997, and substitute the following opinions.

This is an appeal from an order granting summary judgment in favor of appellees, University of Houston, Matthew Stewart, and Jon Williams (collectively "appellees"). In one point of error, appellant, Demetria Clark, contends the summary judgment was improperly granted. We reverse the judgment of the trial court and remand the case for further proceedings.

### Background

On February 9, 1991, Kevin Thomas was involved in a fist fight at the University Center Circle on the University of Houston campus. Thomas got into his jeep, where University police officers instructed him to stay. Before the officers could ascertain his identity, Thomas fled the scene.

As Thomas left the campus, Sergeant Jon Williams turned his patrol car sideways and tried to stop Thomas's jeep. Thomas drove his vehicle around the patrol car, and Williams attempted to follow. Williams then observed another University of Houston patrol car in position to intercept Thomas. At that point, Williams radioed to the patrol car and told the officer to stop the jeep. Officer Stewart activated his overhead lights and siren and pursued Thomas. During the chase, Thomas's jeep ran a red light and collided with a car driven by Sean Boyette. Demetria Clark, a passenger in Boyette's car, sustained injuries in the collision.

Clark sued appellees for negligence, negligence per se, and civil rights violations.[1]

---

1. The United States Supreme Court has recently held that as a general rule, a police officer does not violate a suspect's Fourteenth Amendment right to substantive due process by initiating a high-speed pursuit that results in the suspect's death. *See County of Sacramento v. Lewis*, 523 U.S. 833, ——, 118 S.Ct. 1708, 140 LEd.2d 1043 (1998). After reviewing *Lewis*, we do not find it to be relevant to any issue before us, nor has either party filed a supplemental brief suggesting otherwise.

Williams and Stewart moved for summary judgment based on the affirmative defense of official immunity. The University of Houston also moved for summary judgment relying on the affirmative defense of sovereign immunity. The trial court granted summary judgment in favor of appellees, and Clark perfected this appeal.

### Standard of Review

The standard we follow when reviewing a summary judgment is well-rehearsed. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively establish each element of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true and indulge all reasonable inferences in the nonmovant's favor. *See id.*

### Analysis

■ In a single point of error, Clark contends summary judgment was improper because Williams and Stewart failed to establish they were entitled to immunity under the doctrine of official immunity. Official immunity is a common law defense that protects governmental officers and employees from personal liability. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). If a governmental employee is immune from suit under the doctrine of official immunity, the governmental entity for which he works is also insulated from liability for the employee's negligent act. *See DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex.1995). Under the doctrine of official immunity, a governmental employee has official immunity for

the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *See Chambers*, 883 S.W.2d at 653. Clark does not dispute that Williams and Stewart were acting within the scope of their authority; this element of official immunity is not at issue. Additionally, because we hold that appellees did not establish good faith as a matter of law, we need not address Clark's contention that Stewart was performing a ministerial rather than a discretionary task.

■ When a bystander is injured as a result of a high speed pursuit, a police officer may be entitled to summary judgment if he proves that a reasonably prudent officer, under the same or similar circumstances, could have believed the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *See id.* The "could have believed" aspect of this good faith test requires a police officer to show that a reasonably prudent officer might have believed the pursuit should have been continued. *See id.* at 656–57. The officer need not prove that it would have been unreasonable to stop the pursuit, nor must the officer prove that all reasonably prudent officers would have continued the pursuit. *See id.* at 656.

■ The *Chambers* good faith test establishes an elevated standard of proof for a non-movant seeking to defeat a claim of official immunity in response to a defendant's motion for summary judgment.[2] To controvert a police officer's summary judgment proof of good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts." *Id.* If officers of reasonable competence could disagree on this issue, immunity should be recognized. *See id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

---

**2.** We note, however, that *Chambers* does not nullify the well established rules which govern summary judgment review of police pursuit cases. *See Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994)

(where the court reaffirmed the application of summary judgment rules in official immunity cases).

■ To establish good faith, appellees rely on their own affidavits and the affidavit of their superior officer, Assistant Police Chief Frank Cempa. Williams's affidavit details the events preceding the accident, including the weather, road, and traffic conditions. Williams also explains that when he made the decision to stop Thomas, he "knew that [Thomas] was a suspect in assaultive conduct and that he fled police officers who were attempting to detain him...." After discussing these facts, Williams concludes:

> I believed that at that time of night with the minimal traffic on the street and the nature of the area in which I traveled, diminished the risk from the pursuit itself, while the suspect and the manner in which he operated his vehicle posed a significant risk to the public. I believed, and in my opinion any reasonably prudent police officer in my position would also have believed, that during the pursuit, the need to stop the suspect vehicle was essential to insure the safety of the public by way of attempting to follow the suspect vehicle.

Stewart's affidavit provides a similar account of the details preceding the accident. He also states he activated his emergency lights and siren and drove carefully during the pursuit. Regarding his decision to pursue Thomas, Stewart states:

> I acted as a reasonable and prudent police officer in my decision to follow the suspect vehicle.... I believed, and in my opinion any reasonably prudent police officer in my position would also have believed, that during the pursuit the need to stop the suspect vehicle was essential to insure the safety of the public by way of attempting to follow the suspect vehicle.

■ Cempa's affidavit, which qualifies him as veteran police officer, states that after reviewing appellees' affidavits and the circumstances surrounding the incident, he believes that "Sergeant Jon Williams and Matthew Stewart complied with state law and the University of Houston police department policy when they followed Thomas's vehicle on February 9, 1991." Cempa adds that under the facts surrounding this case, "the need to apprehend Mr. Thomas outweighed the risk of harm to the public and that any reasonably prudent officer could have made the decision that the need to apprehend the suspect outweighed the risk of harm to the public in continuing the pursuit." We will examine the sufficiency of Assistant Chief Cempa's affidavit first.

■ An expert's affidavit will support summary judgment only if it is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily controvertible. *See* Tex.R. Civ. P. 166a(c). However, an affidavit that merely contains an expert's conclusory statements is insufficient to support or defeat summary judgment. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). This is true because such statements are not credible or susceptible to being readily controverted. *See id.* (citing Tex.R. Civ. P. 166a(c)). Cempa's affidavit does nothing more than state his opinion that the officers' affidavits, as well as the facts of the case, indicate the officers acted in good faith the night they pursued Thomas. As such, the affidavit is conclusory and insufficient to establish the officers' good faith as a matter of law. *See id.* We must now determine whether Williams's and Stewart's affidavits conclusively establish their good faith.

■ Good faith may be established through affidavit of a defendant-officer, again, subject to the condition the testimony satisfies the conditions of Rule 166a(c) of the Texas Rules of Civil Procedure. The officer's conclusory statement that a reasonable officer would or would not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997). Instead, the officer's testimony regarding good faith must (1) address what a reasonable officer *could have believed* under the circumstances, and (2) be substantiated with reference to each aspect of the *Chambers* balancing test. *See id.* at 466–67.

■ Recently, in *Wadewitz*, the Texas Supreme Court clarified the summary judgment burden a defendant police officer must satisfy in order to establish that he is entitled to official immunity. *See id.* at 464.

Under *Chambers*, good faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *See id.* at 467. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of emergency response, "need" is determined by the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *See id.* Conversely, the "risk" aspect of good faith refers to the countervailing public safety concerns and is determined by the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *See id.*

We have carefully reviewed appellees' summary judgment affidavits and find that neither is sufficient to substantiate their conclusions about the existence of good faith. Although both affidavits generally suggest the officers' immediate presence was necessary to apprehend Thomas, neither affidavit discusses the seriousness of the assault Thomas allegedly committed or what alternative courses of action, if any, were available to apprehend him. Consequently, the affidavits do not sufficiently discuss the need aspect of the *Chambers* balancing test. *See id.* at 467. Moreover, the officers' affidavits are devoid of any meaningful reference to the

risk aspect of the *Chambers* balancing test. Although the affidavits state that favorable road, traffic, and weather conditions "diminished" the risk of pursuing Thomas, neither affidavit suggests the officers considered or even perceived the nature and severity of harm the pursuit may have caused (including potential injuries to bystanders as well as the possibility that an accident would prevent the suspect from being apprehended) or whether a reasonably prudent officer would detect any clear risk of harm.[3] Because the affidavits fail to take into account both sides of the *Chambers* test, the affidavits do not establish a suitable basis for concluding that a reasonable officer in the officers' positions could or could not have believed that the officers' actions were justified. *See id.*

The dissent would hold the officers' affidavits sufficiently address the risk aspect of good faith because their affidavits detail "the prevailing road, traffic, and weather conditions" that existed the night the accident occurred. This, of course, ignores the clear language of *Wadewitz*, which explicitly requires the discussion of "risk" to include details relating to "the nature and severity of harm the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer." *Id.* Although we believe the risk aspect of good faith may be established without reference to *every* consideration set forth in *Wadewitz*, we cannot conclude, as the dissent does, that Williams's statement that "[t]he weather was clear and the pavement was dry and the traffic was light," constitutes suffi-

---

**3.** The dissent asserts that "the majority holds that evidence of road, traffic, and weather conditions is not sufficient to satisfy *Wadewitz* even though the record contains no allegation or evidence that any other material risk factor was present or could have been perceived by the officers." (emphasis added). Although it is unclear, the dissent seems to suggest it was *Clark's* burden to produce summary judgment proof to show what material risks other than the prevailing road, traffic, and weather conditions were present the night the officers pursued Thomas. We point out that at summary judgment, the

movant (not the non-movant) carries the burden of showing it is entitled to judgment as a matter of law. *See American Tobacco Co., Inc.*, 951 S.W.2d at 425. In any event, we suggest the fact that Clark, a bystander, was injured during the pursuit and then sued Williams and Stewart based on their conduct raises an issue as to whether the officers considered or even perceived the possibility that injuries to bystanders may occur as a result of participating in a high-speed pursuit through a residential neighborhood.

cient discussion relating to the "countervailing public safety concerns" the *Wadewitz* Court had in mind. *See id.*

The dissent next suggests that because some risks, such as the theoretical possibility that property damage or personal injury (or presumably even loss of life), are "inherent in any pursuit situation ... no useful purpose" is served by requiring officers to discuss those risks in their summary judgment affidavits. Instead, the dissent contends, *Wadewitz* requires the defendant-officer's affidavit to address only "the specific circumstances present ... that could increase the chance of damage or injury from a pursuit above what is inherent in any pursuit." We have carefully considered this approach and find it is deficient in at least three respects.

First, the dissent has cited and we have found no authority to support the proposition that a defendant-officer, who moves for summary judgment, is not required to discuss the serious risks the dissent labels as "inherent" simply because they are present "in any pursuit situation." Certainly, such a suggestion cannot be gleaned from *Wadewitz*. In fact, when discussing the requirements for establishing the risk aspect of good faith, the supreme court *expressly* stated that two of the most critical factors are: (1) the potential for injury to bystanders, and (2) the possibility that an accident could occur. *See Wadewitz*, 951 S.W.2d at 467. In this case, neither of the officers' affidavits states or even implies that they perceived these risks on the night in question, much less how or if the officers factored these risks into their decision to pursue Thomas.

Secondly, the dissent's approach forces courts to presume (again, in a summary judgment context) not only that the risks of property damage and personal injury were present in a particular case, but that the defendant-officer perceived and assessed those risks in deciding whether and/or how to pursue a particular suspect. To presume any of these facts offends the well established standard of review we must apply in summary judgment cases. *See American Tobacco Co., Inc.*, 951 S.W.2d at 425.[4]

Finally, the dissent fails to explain precisely how courts are to distinguish between those risks that are "inherent in any pursuit" from those that are material in a particular case. This, of course, is critical because according to the dissent, a defendant-officer's summary judgment affidavit need only address the risks that are material in a particular case. Furthermore, the dissent ignores the distinct possibility that in one case, these "inherent" risks (whatever those risks are) may differ in degree and may, therefore, be more material to the issue of good faith than in another case.[5]

We now turn to the dissent's contention that the majority has addressed unassigned error. Focusing on two sentences in Clark's entire brief, the dissent asserts that Clark's argument cannot "fairly be read to challenge the sufficiency of the evidence supporting the risk aspect of good faith." Because the majority addresses the sufficiency of appellees' summary judgment proof regarding risk, the dissent suggests we have "reverse[d] the summary judgment on a ground not properly before us." The dissent also questions the majority's "impartiality" and implies that we have stepped outside our role as an appellate court and become an "advocate" for Clark. To test this theory, it is necessary to examine Clark's brief in detail.

In the opening paragraph of her brief, Clark details the factual background of the case and argues:

> The University of Houston Police Department's high speed pursuit of [Thomas] occurred in a residential neighborhood and reached speeds of 90 miles per hour. The

---

4. We also disagree with the dissent's suggestion that the road, traffic, and weather conditions were the only "pertinent" risk factors involved in pursuing Thomas. The officers' appellate brief does not contain such an argument, and their summary judgment affidavits do not imply this is the situation before us.

5. Stated differently, the dissent assumes the degree of risk of causing property damage or personal injury is equal in every case. This is simply incorrect. For example, the risk of causing property damage or personal injury is undoubtedly greater in cases where an officer pursues a suspect through a residential neighborhood than where an officer pursues a suspect down a rural county road.

University of Houston Police pursued Kevin Wayne Thomas under circumstances they knew or should have known would be extremely dangerous to the public, including the Plaintiff herein.

Just below this argument, Clark contends, "[t]he trial court erred in granting Defendants' motion for summary judgment because there are genuine issues of material fact and Defendants are not entitled to judgment as a matter of law." Clark then challenges the sufficiency of appellees' proof of good faith and asserts:

"Defendants did not act in good faith when deciding to pursue Kevin Thomas. The standard for determining if an·officer acted in good faith is whether 'a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.' Defendants must show that 'a reasonably prudent officer might have believed that the pursuit should have been continued.' Here there was no immediate need to continue pursuit of Co–Defendant Kevin Thomas. There was no substantial evidence to believe Kevin Thomas was actually involved in a fight or needed to be detained. In addition, it was not immediately necessary to apprehend Kevin Thomas, and any benefit it would have been to apprehend him immediately *was greatly outweighed by the risk of harm posed to the public, the police officers involved, and Kevin Thomas himself in attempting to stop him.*"

(emphasis added) (citations omitted). In addition, after referencing the expert affidavit attached to her summary judgment response, Clark argues:

[A]ny reasonably prudent law enforcement officer, under the same or similar circumstances, *could not have believed the need to immediately apprehend Mr. Thomas*

*outweighed a clear risk of harm to other members of the public using the highway.* In fact, the need to protect the public far outweighed the need to immediately apprehend Mr. Thomas and the failure to adhere to this standard was the proximate cause of the accident.

(emphasis added).

Despite the language set forth above, the dissent states that Clark's brief fails to sufficiently challenge the officers' summary judgment proof regarding the risk aspect of good faith.[6] We disagree with the dissent's interpretation of Clark's argument because it is both hypertechnical and in conflict with supreme court precedent, which requires appellate courts to construe briefing rules "reasonably but liberally." *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex.1996); *see also Tate v. E.I. DuPont de Nemours & Co., Inc.*, 934 S.W.2d 83, 84 (Tex.1996); *Crown Life Ins. Co. v. Estate of Gonzalez*, 820 S.W.2d 121, 121–22 (Tex.1991); *Gay v. City of Hillsboro*, 545 S.W.2d 765, 766 (Tex.1977). A fair reading of the *entire* argument set forth in Clark's brief clearly demonstrates that Clark intended this court to consider whether the appellees' summary judgment proof was sufficient to conclusively prove both the need *and* the risk aspects of the *Chambers* good faith test. To require Clark to provide any additional argument would defeat this court's policy of permitting full consideration of an appellant's point of error. *See, e.g., Milligan v. State Farm Mut. Auto. Ins. Co.*, 940 S.W.2d 228, 229 n. 1 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Ortiz v. Shah*, 905 S.W.2d 609, 610 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

Nevertheless, the dissent insists the majority has addressed "unassigned error" and cites *Central Education Agency v. Burke*, 711 S.W.2d 7 (Tex.1986) to support its asser-

---

**6.** In doing so, the dissent holds Clark to a stricter standard of adherence to the requirements for appeal than it holds appellees for adherence to the requirements for summary judgment. This is directly contrary to well established law and inconsistent with the approach taken by the Texas Supreme Court. *See American Tobacco Co., Inc.*, 951 S.W.2d at 425 (holding that in reviewing a summary judgment, an appellate court must closely examine the movant's summary judgment proof and resolve any doubts in favor of the non-movant); *Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990) (holding that in determining whether a party has raised a particular argument on appeal, an appellate court is obligated to "construe points of error liberally in order to adjudicate justly, fairly and equitably the rights of the litigants.").

tion. In *Burke*, the Austin Court of Appeals reversed a summary judgment on a ground the appellant had neither argued before the trial court nor presented in his appellate brief. *See id.* at 8. In reversing the case, the supreme court pointed out that "[i]ssues not expressly presented to the trial court may not be considered on appeal as grounds for reversal of a summary judgment." *Id.* The facts of this case are far different than those presented in *Burke.* Unlike the situation in *Burke*, Clark's response to appellees' motion for summary judgment *specifically* contested the issue of good faith and argued the officers failed to establish their good faith as a matter of law. In addition, as set forth above, Clark's appellate brief clearly challenges the sufficiency of the officers' summary judgment proof regarding good faith (*i.e.*, need *and* risk) and urges reversal on the same grounds set forth in her summary judgment response. Consequently, the dissent's assertion that Clark has not properly challenged the sufficiency of appellant's summary judgment proof supporting the risk aspect of good faith is simply wrong.

### Conclusion

Because appellees' summary judgment affidavits fail to take into account both sides of the *Chambers* test, the affidavits do not establish an adequate basis for concluding that a reasonable officer in the officers' positions could have believed that the officers' actions were justified. Appellees' summary judgment proof, therefore, does not conclusively establish that Williams and Stewart acted in good faith the night they pursued Thomas.[7] Consequently, the trial court erred in granting summary judgment in their favor. In addition, because the University based its immunity on that of the officers, the trial court also erred in granting summary judgment for the University of Houston. The trial court's judgment, is reversed and the case is remanded for further proceedings.

MURPHY, C.J., and YATES, AMIDEI, FOWLER and O'NEILL, JJ., join this majority opinion.

EDELMAN, Justice, dissenting on rehearing en banc.

The majority opinion concludes that the University failed to sustain its burden to prove the affirmative defense of immunity because the appellees' affidavits do not adequately address the need and risk aspects of good faith. I disagree with this conclusion in three respects.

### Need Aspect

A police officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994). The "could have believed" aspect of this good faith test means that, in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer might have believed the pursuit should have been continued. *See id.* at 656–57. It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably

---

7. The dissent expresses concern that an officer reading the majority opinion will be left to wonder what Williams or Stewart should have said in their affidavits. There is no reason for any such confusion. At the time they filed their summary judgment affidavits, appellees did not have the benefit of the *Wadewitz* decision. Today's opinion should make it clear that to conclusively establish good faith, a defendant-officer's affidavit should fully discuss both the need and risk aspects of good faith, including as many of the factors .mentioned in *Wadewitz* as possible (as well as any other factors the defendant-officer might have considered the night in question). As noted, this does *not* mean an officer cannot establish good faith without reference to *every* need or risk factor set forth in *Wadewitz*. In this particular case, however, we cannot conclude the officers' bare assertions that favorable road, traffic, and weather conditions "diminished" the risk of pursuit are sufficient to address the public concerns described in *Wadewitz*. Common sense suggests that reasonably prudent officers routinely assess (either consciously or subconsciously) the basic public safety considerations expressed in *Wadewitz*, either before or during each high-speed pursuit. To ask a defendant-officer to express. those considerations in affidavit form is not, in our opinion, overly burdensome.

prudent officers would have continued the pursuit. *See id.* at 657.

Good faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, *based on the officer's perception of the facts at the time of the event. See Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex.1997). The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. *See id.* In the context of an emergency response, need is determined by *such factors as* the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *See id.*

The "risk" aspect of good faith refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *See id.* Without taking both sides of the *Chambers* balancing test into account, an affiant cannot have a suitable basis for concluding that a reasonable officer could or could not have believed that the officer's actions were justified. *See id.*

Conclusory statements by an expert witness are insufficient to support or defeat summary judgment. *See id.* at 466. Thus, an expert witness' conclusory statement that a reasonable officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment. *See id.* Instead, expert testimony on good faith must address what a reasonable officer could have believed under the circumstances and must be substantiated with reference to each aspect of the *Chambers* balancing test. *See id.* at 466–67.

In this case, Clark's brief adequately challenges the sufficiency of appellees' summary judgment proof as to the "need" aspect of the *Chambers* test:

Here there was no immediate need to continue pursuit of Co–Defendant Kevin Thomas. There was no substantial evidence to believe Kevin Thomas was actually involved in a fight or needed to be detained. In addition, it was not immediately necessary to apprehend Kevin Thomas, and any benefit it would have been to apprehend him immediately was greatly outweighed by the risk of harm posed to the public, the police officers involved, and Kevin Thomas himself in attempting to stop him.

With regard to need, Williams' affidavit states:

I was dispatched to a fight in progress at the University Center Circle at approximately 2:00 A.M. Prior to my arrival at the scene, uniformed foot patrol officers Adams and Marquez attempted to detain the driver of a green Suzuki jeep who was suspected to have been involved in the fight. Officer Adams noticed the driver had a large bump on his head. He had his hands in the vehicle through the open window to check the condition of the driver. The driver (later determined to be Kevin Wayne Thomas) started his vehicle. Both officers repeatedly ordered him to stay at the scene. Officer Marquez also had his hands inside the vehicle trying to stop the driver from leaving the scene. The driver suddenly drove off. Officer Adams was able to extract his arms from the vehicle, but the right forearm of Officer Marquez was struck by the window frame. Officer Adams broadcast that the vehicle needed to be stopped.

. . . .

When I made the decision to stop the green Suzuki jeep, I knew that the driver was a suspect in assaultive conduct and that he fled police officers who were attempting to detain him and had committed the criminal offense of evading detention which is a class B misdemeanor. Furthermore, the suspect had not been identified before he fled the foot patrol officers . . . .

The manner in which the suspect operated his vehicle and the high rate of speed at which he traveled caused me to believe that the suspect posed a danger to the public.

Stewart's affidavit similarly states:

While I was ordered by my supervising sergeant, [Williams], to stop the suspect vehicle, I was also aware that the driver of the speeding vehicle was believed to have engaged in a fight on the University campus and evaded detention by University police officers—such offense was, at least, a class B misdemeanor and pursuit was authorized by University of Houston policy. In addition, the speed at which the suspect passed my patrol unit was a clear indication that the driver of the suspect vehicle had no regard for the safety of the public and needed to be stopped.

The affidavits thus addressed the seriousness of the crime to which the officers responded and the officers' perception of the urgency of the circumstances requiring police intervention. Although the affidavits do not necessarily establish that *all* reasonably prudent officers would have concluded that Thomas needed to be pursued, they set forth facts and reasons sufficient to show that a reasonably prudent officer might have believed that Thomas needed to be pursued. *See Chambers,* 883 S.W.2d at 656–57.

The majority opinion concludes that the affidavits do not sufficiently address the need aspect because neither "discusses the seriousness of the assault Thomas allegedly committed or what alternative courses of action, if any, were available to apprehend him." Whether or not the affidavits address the seriousness of the *original* assault of which Thomas was suspected, they clearly address the seriousness of his actions in evading arrest and his assaultive conduct toward the officer whose arms were inside Thomas' vehicle when he drove away.

Moreover, in stating that the need aspect is determined by *"such factors as"* those found lacking by the majority, *Wadewitz* does not require affidavits to discuss *every*

*facet* of need or risk, but only to address both need and risk and to do so *"based on the officer's perception of the facts at the time of the event."* *See Wadewitz,* 951 S.W.2d at 467 (emphasis added). Thus, if an officer's perception of the facts at the time of the event happens to focus on considerations other than or fewer than those recited in *Wadewitz,* a showing of good faith should not thereby be arbitrarily precluded if the urgency of the circumstances requiring police intervention is otherwise shown. Therefore, contrary to the majority opinion, I believe Williams' and Stewart's affidavits adequately addressed the need aspect of the *Chambers* balancing test.

### Risk Aspect

#### Unassigned Error

A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error. *See, e.g., Pat Baker Co., Inc. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998); *Vawter v. Garvey,* 786 S.W.2d 263, 264 (Tex. 1990). A point of error is sufficient if it directs the attention of the appellate court to the error about which the complaint is made. *See* TEX.R.APP. P. 74(d).[1] In civil cases, complaints that the evidence is legally insufficient to support a particular issue or finding may be combined under a single point of error if the argument under the point sufficiently directs the court's attention to the nature of the complaint made regarding each such issue. *See id.* Thus, for example, a point of error asserting broadly that the trial court erred by granting the summary judgment will allow an appellant to argue all reasons that the trial court erred in granting the summary judgment. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995). Importantly, however, the argument in the brief must still specifically attack each particular ground *and* present such a discussion of the relevant facts and authorities as are necessary to sustain each challenge. *See* TEX. R.APP. P. 74(f).

These principles mean that an appellate court is not free to reverse a judgment on

---

1. Because this appeal was perfected before September 1, 1997, it is generally governed by the Texas Rules of Appellate Procedure in effect before that date.

any valid ground *it* may be able to uncover, but only on the grounds that have actually been presented by the appellant. To do otherwise would defeat the impartiality of the court by making it an advocate for the appellant.

In this case, Clark's sole point of error states "The trial court erred in granting Defendant's motion for summary judgment because there are genuine issues of material fact and Defendant is not entitled to judgment as a matter of law." Among other things, the brief states that the defendants failed to prove the affirmative defense of immunity and that the defendants were not acting in good faith in deciding to engage in the pursuit. In addition, as indicated in the passage quoted above, the brief fairly challenges the sufficiency of the evidence of the need aspect.

However, the closest the brief comes to challenging the sufficiency of the evidence of the risk aspect are the statements: (1) "it was not immediately necessary to apprehend Kevin Thomas, and any benefit it would have been to apprehend him immediately was greatly outweighed by the risk of harm posed to the public, the police officers involved, and Kevin Thomas himself in attempting to stop him"; and (2) "In addition, it [the affidavit of Clark's expert witness] proclaims that any reasonably prudent law enforcement officer, under the same or similar circumstances, could not have believed the need to immediately apprehend Mr. Thomas outweighed a clear risk of harm to other members of the public using the highway." These statements clearly argue that the need was *outweighed* by the risk, but do not challenge the sufficiency of the evidence setting forth the risk.[2] The majority opinion nevertheless concludes:

> [T]he officers' affidavits are not substantiated with sufficient reference to the risk aspect of the *Chambers* balancing test. Although the affidavits state the risk of pursuing Thomas was "diminished," neither affidavit details the nature and severity of harm the pursuit may have caused or

whether a reasonably prudent officer would detect any risk of harm.

I do not believe that any statements in Clark's brief can fairly be read to challenge the sufficiency of the evidence supporting the risk aspect of good faith and thereby support this conclusion. Nor do I believe that we are authorized to address it based only on a global challenge to the sufficiency of the evidence generally, as contrasted from a challenge to the sufficiency of the evidence of the risk aspect specifically. Therefore, I believe the majority's conclusion reverses the summary judgment on a ground not properly before us. *See Central Educ. Agency v. Burke,* 711 S.W.2d 7, 9 (Tex.1986).

### Evidence of Risk Aspect

Even if a proper challenge had been made with regard to the risk aspect, Williams' affidavit states:

> The weather was clear and the pavement was dry and the traffic was light due to the time of night. I was familiar with the area and streets upon which I was traveling. The area of Calhoun Street was basically commercial and I observed no cars other than the suspect vehicle and officer Stewart's vehicle on the roadway. When the suspect vehicle proceeded onto M.L.K. Blvd., I knew that the street was divided by a median and that to the left was a green belt and to the right was a park; therefore, no traffic would be intersecting M.L.K. Blvd. There was no traffic from the point of entrance one (1) to M.L.K. Blvd. and no traffic from M.L.K. to Old Spanish Trail. From my professional experience, I was aware that suspect vehicles will often appear to flee but stop after having time to observe emergency lights and siren behind them. When I decided to pursue the suspect vehicle, I believed that at that time of night with the minimal traffic on the street and the nature of the area in which I traveled, diminished [sic] the risk from the pursuit itself, while the suspect and the

---

2. Nor is it apparent how the risk could be great enough to outweigh the need if it is not shown by

sufficient evidence in the first place.

manner in which he operated his vehicle posed a significant risk to the public.[3]

Because this portion of the affidavit addresses the prevailing road, traffic, and weather conditions and thus the likelihood harm would occur from the officer's actions *in this case*, I believe it presents sufficient evidence of the risk aspect to support a conclusion that a reasonable officer might have believed Williams' actions were justified based on the officer's perception of the facts at the time of the event.

The majority opinion concludes that the affidavits did not establish the risk aspect because neither detailed "the nature and severity of harm the pursuit may have caused (including potential injuries to bystanders as well as the possibility that an accident would prevent the suspect from being apprehended) or whether a reasonably prudent police officer would detect any clear risk of harm." Obviously, even under the most ideal circumstances, every situation in which vehicles are driven on roads presents some possibility that a motorist will fail to exercise ordinary care and cause damage or injury. This likelihood increases in pursuit situations due to higher speeds and the willingness of a suspect to take greater risks in order to escape. There is also always a possibility that another vehicle or pedestrian will appear during a chase unexpectedly and without adequate time to enable a chase vehicle to avoid injury or damage. Such abstract risks are inherent in any pursuit situation, and, if they alone outweighed the need to apprehend suspects, good faith could never be shown. Thus, no useful purpose is served by requiring police officers to reiterate such inherent risks in their affidavits just for the sake of doing so.

Instead, what *should* influence an officer's decision in a particular case and what therefore should be described in his affidavit are the specific circumstances present that could increase the chance of damage or injury from a pursuit above what is inherent in any pursuit. In a given case, these might be, in type and number, comparable to or different from those outlined in *Wadewitz*. Where specific risk factors are present in a case, whether of the type and number identified in *Wadewitz*

or otherwise, and the officers fail to perceive them or address them in their affidavits, the risk element of the good faith test is not met. On the other hand, where those risk factors are perceived by the officers and addressed in their affidavits, the risk element of the good faith test should be satisfied. If, for example, road, traffic, and weather conditions happen to be the only such factors which are pertinent in a particular case, the officers' affidavits should not be held insufficient for failing to discuss others that did not exist.

In this case, the majority holds that evidence of road, traffic, and weather conditions is not sufficient to satisfy *Wadewitz* even though the record contains no allegation or evidence that any other risk factor was present and could have been perceived by the officers. An officer reading the majority opinion will thus be left to wonder whether, in addition to describing the risk factors that were actually presented, his affidavit must also: (a) list risk factors which are inherent in every pursuit, and (b) affirmatively negate the existence of all other risk factors that were not present. If so, a reason can always be found by a court to reject an affidavit as insufficient and deny summary judgment. Of greater concern, however, is whether such uncertainty about establishing good faith will interfere with the spontaneous and instinctive manner in which pursuit decisions must realistically be made.

Because I therefore believe that neither Clark's challenge to the legal sufficiency of the evidence nor her remaining arguments can properly be sustained, I would affirm the judgment of the trial court.

ANDERSON and HUDSON, JJ., join this dissenting opinion.

3. Similar testimony is found in Stewart's affidavit.