**Stephen Gary ENER and Harris County, Appellants,**

v.

**Francis G. THOMAS, Jr. and John Alexander Rourke, Appellees.**

No. 14–97–00214–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 21, 1999.

Rehearing Overruled March 4, 1999.

Frank E. Sanders, Houston, for appellants.

Robert E. Lapin, Ronald Wardell, Houston, for appellees.

ANDERSON, EDELMAN and LEE, JJ.*

## OPINION

RICHARD H. EDELMAN, Justice.

In this official immunity case, Stephen Gary Ener and Harris County appeal the denial of their motion for summary judgment against Francis G. Thomas, Jr. and John Alexander Rourke on the grounds that: (1) the evidence showed as a matter of law that Ener was protected by official immunity; (2) appellees failed to raise a fact issue concerning whether Ener acted in good faith; and (3) Thomas failed to file a timely summary judgment response or obtain leave of court to file a late response. We affirm.

## Background

While pursuing a speeding vehicle in his patrol car, Ener, a deputy constable, was involved in a collision in which Thomas and Rourke were allegedly injured. Thomas and Rourke filed lawsuits, which were consolidated, and Ener and Harris County filed motions for summary judgment based on official immunity. The trial court de-

nied them summary judgment, and Ener and Harris County brought this interlocutory appeal. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon 1997).

## Standard of Review

A summary judgment may be granted if the summary judgment evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on the issues expressly set out in the motion or response. *See* TEX.R.CIV.P. 166a(c). Grounds set forth in a brief or the evidence, but not in the motion itself, may not be relied upon. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex. 1997). To be entitled to summary judgment, a defendant must either (1) disprove at least one element of each of the plaintiff's causes of action, or (2) establish all elements of an affirmative defense to each claim. *See American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). In reviewing a summary judgment, we take all evidence favorable to the nonmovant as true, and indulge every reasonable inference in the nonmovant's favor. *See id.*

## Sovereign Immunity

■ Appellants' first three points of error argue that their summary judgment evidence conclusively established the affirmative defense of official immunity. Unless waived, sovereign immunity protects the State of Texas, its agencies, and officials from lawsuits for damages absent legislative consent to sue the State. *See Federal Sign v. Texas So. Univ.,* 951 S.W.2d 401, 405 (Tex.1997).[1] Sovereign

---

* Senior Justice Norman R. Lee sitting by assignment.

1. The limited waiver of sovereign immunity is set forth in section 101.021 of the Texas Tort Claims Act. *See DeWitt v. Harris County,* 904 S.W.2d 650, 652 (Tex.1995). Section 101.021, entitled "Governmental Liability," provides:

 A governmental unit in the state is liable for:

 (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

 (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

immunity protects governmental entities from liability whereas official (or qualified) immunity protects individual governmental employees therefrom. *See DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex. 1995). Where a governmental employee has no liability because of official immunity, the governmental entity by which he is employed is also not liable for that employee's negligence. *See id.* at 653–54. A governmental employee is protected by official immunity when he: (a) performs a discretionary duty (b) within the scope of his authority and (c) acts in good faith. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997).

### Good Faith

 Because the issue of good faith is dispositive of this appeal, we address it first. A police officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994). The "could have believed" aspect of this good faith test means that, in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer might have believed the pursuit should have been continued. *See id.* at 656–57. It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit. *See id.* at 657.

 Good faith depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *See Wadewitz,* 951 S.W.2d at 467. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. *See id.* In the context of an emergency response, need is determined by such factors as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. *See id.*

 The "risk" aspect of good faith refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *See id.* Without taking both sides of the *Chambers* balancing test into account, an affiant cannot have a suitable basis for concluding that a reasonable officer could or could not have believed that the officer's actions were justified. *See id.*

 Regarding the evidence needed to establish or refute good faith, an expert's testimony will support a summary judgment only if it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX.R.CIV.P. 166a(c). Conclusory statements by an expert are insufficient to support or defeat summary judgment. *See Wadewitz,* 951 S.W.2d at 466. Thus, an expert witness's conclusory statement that a reasonable officer could or could not have taken some action will neither estab-

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

lish good faith to support summary judgment nor raise a fact issue to defeat it. *See id.* Instead, expert testimony on good faith must address what a reasonable officer could have believed under the circumstances and must be substantiated with reference to each aspect of the *Chambers* balancing test. *See id.* at 466–67 (holding that the movant did not sustain its burden because the expert affidavit did not address the "risk" aspect of the *Chambers* test).

■■■ In the present case, Ener's affidavit [2] stated, in part:

I was on the job during my regularly scheduled work hours, on duty and patrolling on FM 2920 when I visually observed a motor vehicle speeding. I checked my radar and it indicated the speeding car was going 71 miles per hour in a 55 mile per hour zone. At the time I made this observation it was between 12:30 and 1:00 o'clock in the morning, traffic was extremely light, there were no pedestrians or people on or near the roadway, no open businesses, except for one gas station, or residences with any activity going on at that time of night, the weather was clear and dry and visibility was very good, the roadway was dry and in good condition, and I knew from past experience that traffic would be light. I considered all of the facts observable by me along with the high speed of the violator I had observed and came to the conclusion that I should attempt to apprehend the violator and that the necessity of doing so outweighed any risk of harm to the public. I turned on my overhead emergency lights and siren and began to pursue the traffic law violator.

As I was pursuing the violator with my overhead lights and siren in operation I approached the intersection of FM 2920 and Rhodes Road. As I approached the intersection I observed the road and surrounding conditions, I observed the speeder I was pursuing go through the intersection of Rhodes Road and FM 2920, and he went through the intersection without any problems that I could observe.... As I approached the intersection I had my overhead lights and siren on and the road ahead of me was clear except for the speeding car I was pursuing. At this time I believed the speeder was acting recklessly and was a danger and that I should definitely apprehend him. I believe that the need to apprehend the speeder outweighed any risk to the public posed in doing so. Based on what I knew at the time, everything I could observe, the fact I was driving a marked police car with overhead lights and siren on I believe my pursuit was reasonable and believed it was necessary in order to apprehend the speeder. I believed the speeder posed a high and serious risk of danger to the public. I further believed that the need to apprehend this individual outweighed any risk of danger to the public that attempting to do so would create. Unfortunately, the driver of a Ford pickup, Coy Allen Brown, failed to yield the right of way to an emergency vehicle and a collision resulted.

\* \* \* \*

In my opinion the need to apprehend the reckless and speeding traffic law violator outweighed any risk of harm to the public and I believe that any reasonably prudent patrol officer would have acted exactly as I did under the same or similar circumstances.

In *Clark*, this court held *en banc* that the movants' affidavits were insufficient to

---

**2.** In addition to Ener's affidavit, appellants' motion for summary judgment was also accompanied by affidavits of Ric Sadler and Jim Sumner, an Assistant Chief and a Captain, respectively, in Precinct Four of the Harris County Constable's Office. However, we agree with appellees that both of those affidavits were conclusory because they did not recite the facts upon which their conclusions were based, but merely stated that they relied on the accident report and other records of the case to conclude that Ener was acting in good faith. Therefore, our sufficiency review will focus on Ener's affidavit. *See Wadewitz,* 951 S.W.2d at 466.

satisfy the need aspect of *Chambers* because they failed to address, among other things, what alternative courses of action, if any, were available to apprehend the fleeing suspect. *See Clark v. University of Houston,* 979 S.W.2d 707, 712 (Houston [14th Dist.] 1998, pet. filed) (en banc). *Clark* further held that the movants' affidavits were insufficient to satisfy the risk aspect of *Chambers* because neither suggested that the officers considered or even perceived the nature and severity of harm the pursuit may have caused (including potential injuries to bystanders as well as the possibility that an accident would prevent the suspect from being apprehended) or whether a reasonably prudent officer would detect any clear risk of harm. *See id.*[3] Because appellants' affidavits in this case also fail to address the foregoing matters, the summary judgment evidence was legally insufficient to establish the element of good faith and thus the defense of official immunity. Accordingly, the trial court did not err in denying appellants' motion for summary judgment, appellants' points of error are overruled, and the judgment of the trial court is affirmed.

---

**3.** Although two justices on the panel in the present case dissented from the opinion in *Clark,* this panel is nevertheless bound by that *en banc* decision.