Reversed and Rendered and Opinion filed August 1, 2002









Reversed and Rendered and
Opinion filed August 1, 2002.               

 

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00548-CV

____________

 

MICHAEL
W. WEATHERLY AND THE CITY OF LAKE JACKSON,
Appellants

 

V.

 

ROBERT
L. DERBY, Appellee

 



 

On
Appeal from the 149th District Court 

Brazoria
County, Texas

Trial
Court Cause No. 7477*RM99

 



 

O P I N I O N

This is an
interlocutory appeal from the denial of a motion for summary judgment based
upon the affirmative defense of official immunity.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(5) (Vernon Supp. 2002).  In
one point of error, appellants claim the trial court erred in denying their
motion.  We reverse and render judgment
in favor of the appellants.

 








Background and Procedural
History

On June 22,
1998, Dr. Mouin Sabbagh
contacted the Lake Jackson Police Department for assistance because one of his
patients was threatening to commit suicide. 
Sergeant Michael Weatherly of the City of Lake Jackson Police Department
responded to the call.  Weatherly was
traveling southbound on Yaupon Street at approximately 59 miles per hour with
the lights of his marked patrol car flashing when he approached the
intersection of Yaupon Street and Yaupon Court. 
There, Weatherly=s police car collided with a car driven by Robert L. Derby, appellee, who had pulled out from Yaupon Court in front of
Weatherly.

Derby filed
suit alleging negligence against Weatherly and the City of Lake Jackson (ACity@).[1]  After conducting discovery, Weatherly and the
City filed a motion for summary judgment based on the affirmative defense of
official immunity.  The trial court
denied their motion.  This interlocutory
appeal followed.

Official Immunity 








Weatherly and
the City argue the trial court erred in denying their motion for summary
judgment based on official immunity. 
Official immunity is an affirmative defense that protects governmental
employees from personal liability so that they are encouraged to vigorously
perform their official duties.  Telthorster v. Tennell,  45 Tex. Sup. Ct. J. 948, 949
( June 27, 2002). 
When official immunity shields a government employee from liability, the
government employer is shielded from liability under the doctrine of sovereign
immunity.  University
of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000).  A governmental employee is entitled to
official immunity (1) for the performance of discretionary duties; (2) within
the scope of the employee=s authority; (3) provided the employee acts in good faith.  See City of Lancaster v.
Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  To obtain summary judgment, Weatherly and the
City must conclusively prove each element of this affirmative defense.  Clark, 38 S.W.3d at
580.

It is
undisputed the accident occurred while Weatherly was responding to a call as a
peace officer for the City.  Because
Weatherly was discharging the duties generally assigned to him in responding to
an emergency call, he was performing a discretionary act within the scope of
his authority.  See Chambers, 883
S.W.2d at 655, 658.[2]  Therefore, having established the first two
prongs of the official-immunity test, Weatherly and the City are entitled to
summary judgment if the evidence establishes as a matter of law that Weatherly=s
conduct in response to the suicide call was in good faith.  See Wadewitz v.
Montgomery, 951 S.W.2d 464, 467 (Tex. 1997).








The good-faith
standard is not the equivalent of a general negligence test, which addresses
what a reasonable person would have done. 
See id.  Rather, good faith
depends on how a reasonably prudent officer could have assessed both the need
for the officer=s response and the risks of the officer=s
course of action.  Id.  The need element is determined by factors
such as Athe
seriousness of the crime or accident to which the officer responds, whether the
officer=s
immediate presence is necessary to prevent injury or loss of life or to
apprehend a suspect and what alternative courses of action, if any, are
available to achieve a comparable result.@  Id.  The risk aspect of good faith encompasses Athe
nature and severity of harm that the officer=s actions could cause (including injuries to bystanders as well
as the possibility that an accident would prevent the officer from reaching the
scene of the emergency), the likelihood that any harm would occur, and whether
any risk of harm would be clear to a reasonably prudent officer.@  Id. 
Good faith is conclusively proven by showing that a reasonably prudent
officer under the same or similar circumstances could have believed that the
need for the officer=s response outweighed a clear risk of harm to the public.  See id.; Chambers, 883 S.W.2d at 656.

                           Weatherly and the
City=s Summary Judgment Evidence

In this case,
Weatherly and the City presented several affidavits in support of their motion
for summary judgment.[3]  In his own affidavit, Weatherly addressed the
need aspect of the need/risk balancing test as follows:

I received a call from
Police Officer Carl Herbst advising me of an
attempted suicide.  I was the supervising
sergeant on duty, as well as the officer providing back-up to Officer Herbst.  In such
calls, it is extremely important that the supervising sergeant arrive on the
scene as quickly as possible in order to make major decisions, such as the use
of force to gain entry into the dwelling, and to secure the scene for medical
personnel. 

A
threatened suicide call can rapidly deteriorate.  Frequently, an individual who is suicidal is
also homicidal.  It is important for the
supervising sergeant to take control of the scene and determine the best way to
intervene, not only to protect the life of the individual threatening suicide,
but to protect the lives of others, including other responding officers.  In a threatened suicide call, quick intervention
is crucial and can often times prevent the loss of life. 

Thus, Weatherly=s
affidavit demonstrates he assessed the need for his action by considering the
seriousness of the situation and the necessity of his immediate presence to
prevent injury or loss of life.  See
Clark, 38 S.W.3d at 581.








Derby contends
this affidavit, as well as the others offered by Weatherly and the City, are
insufficient because they do not directly address one additional need factor
identified in WadewitzCwhat
alternative courses of action, if any, were available to achieve a comparable
result.  See 951
S.W.2d at 467.  However, Weatherly=s
affidavit stresses the importance of having Athe supervising sergeant@ (as opposed to any officer) reach
the scene quickly to secure the site and take control of the situation.  By emphasizing the significance of Weatherly
having a personal and physical presence at the scene as quickly as possible, by
implication, Weatherly=s affidavit discounts the possibility that an alternative course
of action would have been appropriate under these circumstances.

With respect to
the risk side of the balancing test, Weatherly stated in his affidavit:

Based
upon my location and the scene of the attempted suicide, I determined that
traveling south on Yaupon was the most expeditious way to proceed.  Yaupon is a major, divided highway in the
city and does not run through residential areas.  I proceeded south on Yaupon street with all
of the emergency lights of my patrol car in operation.  The flashing lights were working properly at
all times.  It is appropriate to respond
to an attempted suicide call by activating emergency lights and proceeding as
quickly as possible to the scene because of the severity of the call and the
possibility that the loss of human life may be occurring.  I used the vehicle=s
emergency lights in order to make my vehicle visible from a long distance.

Weatherly further stated that Athe
roadways were dry and the weather conditions were clear.  The accident occurred at approximately 4:00
pm on a Monday afternoon and the traffic was light.@  As our supreme court held in Clark, an
affidavit in support of an officer=s motion for summary judgment based on official immunity need
not explicitly mention the risk of colliding with a third party, nor must it
negate the existence of all circumstances or risks that did not exist.  38 S.W.3d at 586.  Rather, assessment of the risk may be
established by an affidavit showing the officer assessed the specific
circumstances that affected the risk, such as time of day, traffic, and weather
and road conditions.  Id.








In addition,
Weatherly and the City submitted affidavits from the City=s
Chief of Police, Paul Hromadka, and Barry Adams, the
Texas Department of Public Safety trooper who investigated the accident
scene.  Hromadka
initially noted that in his opinion, a threat to commit suicide constitutes a
police emergency because of the immediate threat of a loss of life.  Based on his review of all documents
pertaining to the accident and his participation on the police department=s
Accident Review Board, Hromadka stated:

A
reasonable prudent officer would have determined that the situation described
to Sgt. Weatherly by Officer Herbst was a
life-threatening emergency and that an immediate response by Sgt. Weatherly,
the supervising sergeant on duty, was necessary and appropriate.  Further, it is my professional opinion that
the manner in which Sgt. Weatherly responded to the emergency police call did
not present more than a minimal risk to the public.  The route Sgt. Weatherly took to reach the
scene did not involve him traveling through a residential or highly congested area, the traffic was light, and the weather conditions dry.

Although Hromadka
did not express an opinion on the ultimate question of whether a reasonable
officer in Weatherly=s position could have believed that Weatherly=s
course of action was justified,[4]
his affidavit provides evidence of how a reasonably prudent officer could have
assessed both the need to respond as Weatherly did and the risk of that
response.

Finally,
Weatherly and the City presented the affidavit of Trooper Barry Adams of the
Texas Department of Public Safety, who investigated the accident scene.  Like Weatherly, Adams noted that Athe
weather was clear and the roads were dry.@  Adams further stated: 

It
is my determination, based on my review of the evidence, that Officer Weatherly
did have his emergency lights operating at the time of the accident. . . .  A reasonably prudent officer under the same
or similar circumstances, would find Officer Weatherly=s
actions justified.  It is reasonable to
conclude that the driver of the other vehicle would have remained stopped.








We conclude the
summary judgment evidence includes facts upon which a reasonably prudent
officer in the same or similar circumstances could agree that the need for Weatherly=s
actions (considering the emergency nature of a suicide threat and potential for
loss of life) outweighed the risk to the public from his response (considering
that the traffic was light, that the route was on a divided highway, that the
weather and road conditions were good, and that the officer had his emergency
lights activated).  Accordingly,
Weatherly and the City established that Weatherly acted in good faith.  See Clark, 38
S.W.3d at 586.

                                            Derby=s
Summary Judgment Evidence

To controvert a police officer=s
summary judgment evidence on good faith, the nonmovant
must show that no reasonable person in the officer=s
position could have thought that the facts justified the officer=s
acts.  Id. at
581.  In response to Weatherly and
the City=s
motion, Derby submitted the affidavit of Michael R. Yosko,
a former patrol officer with the Port Arthur Police Department, along with
various deposition excerpts, the accident report, and a work performance
evaluation prepared several months after the accident.  We find that none of this evidence addresses
the question of whether Weatherly acted in good faith in responding as he
did.  For example, Yosko
stated in his affidavit that Ano reasonable or prudent officer would have endangered others
by driving on this section of Yaupon as Officer Weatherly did.@  While this and other similar statements might
be relevant in assessing whether Weatherly was negligent, they do not
controvert the summary judgment evidence showing that a reasonably prudent
officer in Weatherly=s circumstance could have believed his actions were
justified.  Likewise, statements from Hromadka in which he questions Weatherly=s
failure to get additional information regarding the suicide threat and suggests
that Weatherly should have been Acognizant that [Derby] might have pulled out [from the
intersecting street]@ do not negate the showing that Weatherly acted in good faith. 








Derby argues
Weatherly did not continually assess the need versus the risk.  We disagree. 
The need for his immediate presence as Athe supervising sergeant@ to prevent injury or loss of life remained the same.  Further, Weatherly continually assessed the
risk in  stating
that the intersection he approached was Acontrolled by one stop sign, which is on Yaupon Ct.@
and that he was fully committed to entering the intersection when Derby pulled
out in front of him.  Although Weatherly
did not use the exact language Wadewitz
employs, on the whole he does assess the nature, severity, likelihood, and
obviousness of the risk to the public, namely the risk of a collision with a
third party.  See id. at 585-86 (finding consideration of time of day, weather and
road conditions indicates an assessment of the specific circumstances and risk
present to third parties).  Summary
judgment requires that a movant establish facts upon
which the court could base its legal conclusion, not that the parties use
particular words.  Id.
at 586. 

We hold that
Weatherly and the City conclusively proved, and Derby=s
summary judgment evidence did not successfully controvert, that Weatherly acted
in good faith.  Accordingly, we reverse
the order of the trial court and render judgment in favor of appellants.

 

 

 

 

 

/s/        Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered and Opinion filed August 1, 2002.

Panel consists of Justices Yates, Seymore,
and Guzman.

Do Not Publish C Tex. R.
App. P. 47.3(b).

 











[1]  Derby later
amended his petition to plead a cause of action for Aspecial defects@ against
the City based on the design of Yaupon Street and an alleged obstruction at the
intersection with Yaupon Court.  However,
the trial court granted the City=s motion
for summary judgment on that issue.  The
court=s ruling on that motion is not a subject of this
interlocutory appeal.





[2]  Relying on
section 101.055 of the Texas Tort Claims Act, Derby argues that Weatherly and
the City are not entitled to immunity because the suicide threat was not in
fact an emergency and Weatherly failed to comply with all laws and ordinances
applicable to emergency actions.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.055(2) (Vernon 1997).  However, the official-immunity defense does
not depend on the application of section 101.055, which merely exempts certain
claims from liability under the Texas Tort Claims Act.  See Telthorster,
45 Tex. Sup. Ct. J. at 949 (defining official immunity as Aan affirmative defense that shields
governmental employees from personal liability@
for the good-faith performance of discretionary duties).  





[3]  Although Derby
filed objections to the affidavits and the trial court overruled all such
objections,  Derby
failed to file a notice of appeal or raise a cross-point concerning the denial
of its objections.  Accordingly, we will
not address Derby=s contentions that the affidavits are conclusory and speculative. 
See City of San Antonio v. Hernandez, 53 S.W.3d 404, 407
(Tex. App.CSan
Antonio 2001, pet. denied).  





[4]  Hromadka instead expressed the opinion that a reasonable
prudent police officer, under like circumstances, Awould act in the same manner@ as Weatherly. 
For purposes of establishing good faith, however, the proper focus is on
what a reasonably prudent officer could have believed, not what he or she would
have done.