**Reversed and Dismissed and Majority Opinion and Dissenting Opinion filed January 11, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00061-CV

---

### CITY OF HOUSTON, Appellant

### V.

### SAMUEL SALAZAR, INDIVIDUALLY AND AS NEXT FRIEND OF SAMMY SALAZAR; JUSTIN PACHECO, ROZA SALAZAR AND DAISY SALAZAR, Appellees

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-15403**

---

### DISSENTING OPINION

The objective good faith element of the official immunity defense requires proof that a reasonably prudent police officer under the same or similar circumstances could have believed that his conduct was justified. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656–57 (Tex. 1994). Applying the general test for good faith to a high-speed pursuit, the officer acts in good faith if "a reasonably

prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Id.* at 656; *Tex. Dep't of Pub. Safety v. Zakir*, 665 S.W.3d 884, 895 (Tex. App.—Houston [14th Dist.] 2023, no pet.). The need element requires an assessment of the importance of immediately apprehending a suspect, considering the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to apprehend a suspect or to prevent injury or loss of life, and what alternative courses of action, if any, are available to achieve a comparable result. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 582 (Tex. 2000); *Zakir*, 665 S.W.3d at 895.

When the movant's evidence does not address alternative courses of action, good faith is not conclusively established, and the burden does not shift to the nonmovant to produce controverting evidence. *Zakir*, 665 S.W.3d at 896. Here, the City of Houston's evidence did not address alternative actions that Seidel could have taken instead of using the far-left lane of four lanes to make a right turn and drive through a red light at a speed of no less than thirty miles an hour. I thus disagree with the majority that the City conclusively established good faith.

Seidel pursued a presumed victim of domestic violence, "Tammy Wilson," from a hotel room to the hotel's parking lot. At each step of his pursuit, the woman increased her efforts to evade him: from striking a parked car while exiting the parking lot, which Seidel states in his affidavit was a class B misdemeanor,[1] to speeding, swerving, and running a red light, which he stated was felony evasion. As her speed increased, so did Seidel's, reaching sixty to seventy miles per hour on

---

[1] Seidel offers no facts to support this conclusion, such as damage, if any, to the parked car. Failure to leave identifying information after striking an unattended vehicle is a class B misdemeanor if the total damage to the vehicles exceeds $200. Tex. Transp. Code Ann. § 550.024(b)(2). If the damages do not exceed $200, the offense is only a class C misdemeanor, which Seidel testified does not usually justify police pursuit. *See id.* § 550.024(b)(1).

a four-lane feeder road. When she ran a red light at an intersection, using the far-left lane to turn right, Seidel did the same.[2] When he made this turn, he struck the Salazars' SUV, which was stopped in the middle of the intersection.

In *Zakir*, this court addressed the issue of good faith in a police-caused collision, where there was no evidence addressing alternative actions that the police officer could have taken. *See Zakir*, 665 S.W.3d at 896. Like *Zakir*, the City offers no evidence of alternative courses of action that were available to the police officer other than his right turn from the far-left lane against a red light in a high-speed pursuit.

In his deposition, Seidel agreed that the fleeing woman was reckless when she used the far-left lane to turn right through a red light and agreed that a car turning right at an intersection should turn into the right-most lane of the intersecting road. Seidel states in his affidavit that although vehicles pulled to the right to yield to his emergency vehicle, instead of using this space, he chose to turn from the far-left lane. When asked why he was unable to turn into the intersecting road's right lane (rather than the middle lane of the intersection where the Salazars' SUV was stopped), Seidel responded "I don't recall, sir." Seidel describes the feeder road as "wide and straight with excellent visibility," but in his deposition states he saw the Salazars' SUV in the intersection "possibly a second before the crash." He also could not recall whether he entered the intersection before or after he saw the Salazars' SUV. Seidel's affidavit does not address whether he considered alternatives to his speed at the time of the collision. The evidence further shows he could not recall how long it took him to slow from sixty-to-seventy miles per hour to thirty miles per hour, look left and right, and enter the

---

[2] Seidel omits from his affidavit that he used the far-left lane to make his right turn, although his deposition testimony reveals it. Seidel was found at fault for the accident in both a written reprimand from his employer and in the accident report.

intersection. The evidence reflects alternative courses of action existed. There is just no evidence Seidel considered them, and he could not expound on the actions he did take.

At best, the City cites Seidel's belief that because the fleeing woman had been in a hotel room and had out-of-state license plates, he believed police would be unable to later arrest her for criminal violations if he stopped pursuit. Seidel's belief addresses the factor of "the importance of immediately apprehending a suspect" in the need element of good faith, *Clark*, 38 S.W.3d at 582, not the factor of alternative courses of action. Moreover, he offers no explanation why the police could not use her license plate number to identify her; use registration information from the hotel; or simply use her husband's identifying information to locate her— even though Seidel's affidavit states that the husband was handcuffed and in police custody.[3]

It was the City's burden to establish the required elements of official immunity. *See Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642–43 (Tex. 2015); *Zakir*, 665 S.W.3d at 894. "Requiring officers to assess alternatives insures that public safety is not 'thrown to the winds in the heat of the chase.'" *Clark*, 38 S.W.3d at 584 (quoting *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). Because the City's evidence did not address alternative actions that Seidel could have taken, I would conclude that the City did not prove objective good faith and is thus not entitled to summary judgment based on official immunity.

---

[3] Seidel also justified his continued pursuit because he believed police would be unable to arrest her husband for assault without the fleeing woman's witness statement. The City has provided no authority whatsoever that police may engage in a high-speed pursuit of a recalcitrant witness to secure a statement.

4

For these reasons, I respectfully dissent.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant. (Zimmerer, J., majority).