Opinion issued April 2, 2009




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00471-CV




CITY OF RICHMOND, Appellant

V.

DELIA GARCIA RODRIGUEZ, Appellee




On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 06-CV-152099




MEMORANDUM OPINION

          This suit arises from injuries sustained by appellee, Delia Garcia Rodriguez,
as a result of a collision with a police car. Appellant, the City of Richmond, appeals
the trial court’s denial of its plea to the jurisdiction in favor of Rodriguez. In two
issues on appeal, the City argues that the trial court erred in denying its plea to the
jurisdiction because the City’s immunity was established as a matter of law, and even
if the City’s immunity was waived, Rodriguez has not shown recklessness on the part
of the officer, as required to establish jurisdiction over Rodriguez’s negligence claims
against the City. 
          We reverse and render.
Background
          On the night of September 20, 2004, Sergeant W. Elliot of the City of
Richmond Police Department was looking for traffic violators while sitting in his
marked patrol car in a parking lot on Austin Street in Richmond, Texas. Sergeant
Elliot observed a motorcycle with a non-functional front headlight traveling east on
Austin Street and exceeding the posted 30 miles-per-hour speed limit. Sergeant Elliot
drove his patrol car out of the parking lot, activated his emergency lights, and
accelerated toward the motorcycle to initiate a traffic stop. While he followed the
motorcycle on Austin street, Sergeant Elliot approached South 4th Street and
observed a vehicle, driven by Rodriguez, approaching the South 4th Street’s stop
sign. Sergeant Elliot realized that any traffic at this intersection would have a stop
sign and that he did not. As he proceeded through the intersection, Sergeant Elliott
noticed that Rodriguez’s vehicle did not stop at the stop sign and that she was
entering the intersection. Sergeant Elliot attempted to swerve to the left to avoid
hitting Rodriguez’s vehicle, but his patrol car collided with the vehicle. 
          Rodiguez filed suit against the City and Sergeant Elliott


 for property damage
and injuries as a result of the accident. The City filed a plea to the jurisdiction that
included the affidavits of Sergeant Elliott and Lieutenant B. Teague. In its plea, the
City asserted that it was entitled to governmental immunity because Sergeant Elliott
had official immunity and had acted in the scope of his authority and in good faith. 
The City also argued that, even if the City’s immunity had been waived, Rodgriguez
presented no evidence that Sergeant Elliott acted recklessly. In her response,
Rodriguez asserted that Sergeant Elliott’s affidavit did not show that he assessed
whether he had any available alternatives and therefore he did not show that he acted
in good faith, as required for immunity. Rodriguez also argued that a fact issue was
created by her deposition testimony attached to her response controverting Sergeant
Elliott’s testimony that the motorcycle did not have a functioning headlight and that
Sergeant Elliott’s emergency lights were on at the time of the accident. The trial
court denied the plea and this appeal ensued.
Sovereign Immunity
          As a general rule, a city is immune from suits for money damages. See Wichita
Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003). However, a
waiver of immunity is provided for in section 101.021(1) of the Texas Tort Claims
Act, which provides as follows:
          A governmental unit in the state is liable for:
          (1)     property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence
of an employee acting within his scope of employment if:
 
                    (A)    the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle
or motor-driven equipment; and
 
                    (B)    the employee would be personally liable to the
claimant according to Texas law. . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (Vernon 2005) (emphasis added). 
But “sovereign immunity shields the governmental employer from vicarious liability”
if “official immunity shields a governmental employee from liability.” Univ. of
Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000). “A governmental employee is
entitled to official immunity: (1) for the performance of discretionary duties; (2)
within the scope of the employee’s authority; (3) provided the employee acts in good
faith.” Id.
          “[T]o establish good faith in a police pursuit case, an officer must conclusively
prove that a reasonably prudent officer in the same or similar circumstances could
agree that the need to immediately apprehend the suspect outweighed the risk of harm
to the public in continuing the pursuit, taking into account all the Wadewitz


 [need
and risk] factors.” Clark, 38 S.W.3d at 583. These factors were summarized in Clark
as follows:
          The need element refers to the ‘urgency of the circumstances
requiring police intervention,’ or ‘the seriousness of the crime or
accident to which the officer responds, whether the officer’s immediate
presence is necessary to prevent injury or loss of life or to apprehend a
suspect, and what alternative courses of action, if any, are available to
achieve a comparable result.’ The risk element of good faith refers to
‘the countervailing public safety concerns,’ or ‘the nature and severity
of harm that the officer’s actions could cause (including injuries to
bystanders as well as the possibility that an accident would prevent the
officer from reaching the scene of the emergency), the likelihood that
any harm would occur, and whether any risk of harm would be clear to
a reasonably prudent officer.’ 

Id. at 581 (quoting Wadewitz v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997)).
“Depending on the circumstances, an officer may not be able to thoroughly analyze
each need or risk factor, and that this alone should not prevent the officer from
establishing good faith.” Id. at 583. “[T]o controvert a police officer’s summary
judgment proof on good faith, the [respondent] must do more than show that a
reasonably prudent officer could have decided to stop the pursuit.” Id. “The
[respondent] must show that no reasonable person in the officer’s position could have
thought that the facts justified the officer’s acts.” Id.
          On appeal, we review the trial court’s rulings on a plea to the jurisdiction de
novo. Tittizer v. Union Gas Corp., 171 S.W.3d 857, 860 (Tex. 2005); Tex. Dep’t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). In determining
whether jurisdiction exists, “[w]e construe the pleadings liberally in favor of the
plaintiffs and look to the pleaders’ intent.” Miranda, 133 S.W.3d at 226. “However,
if a plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve the
jurisdictional issues raised. . . .” Id. at 227. “If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea to the
jurisdiction, and the fact issue will be resolved by the fact finder.” Id. at 227–28. 
“However, if the relevant evidence is undisputed or fails to raise a fact question on
the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter
of law.” Id. at 228. “[T]his standard generally mirrors that of a summary judgment
under Texas Rule of Civil Procedure 166a(c).” Id. Accordingly, “[w]hen reviewing
a plea to the jurisdiction in which the pleading requirement has been met and
evidence has been submitted to support the plea that implicates the merits of the case,
we take as true all evidence favorable to the [respondent].” Id. “We indulge every
reasonable inference and resolve any doubts in the [respondent’s] favor.” Id.
          The parties do not dispute that Sergeant Elliott was performing a discretionary
duty and acting within the scope of his authority. Thus, we focus on whether 
Sergeant Elliott showed he acted in good faith as a matter of law and if so, whether
Rodriguez created a jurisdictional fact issue. 
          Sergeant Elliott submitted an affidavit in which he testified that
          6.       While parked at the George Family Development Center,
I observed a motorcycle traveling at a high rate of speed,
who was moving east on Austin Street, which was from the
right hand direction moving in front of me to the left. I
noticed that the motorcycle’s front light was not working. 
Although I do not recall how fast the motorcycle was
traveling, I recall that based on the reading from my radar,
the motorcyclist was exceeding the speed limit, which is 30
miles per hour on Austin Street.
 
          7.       I decided to make a traffic stop and followed my usual
course of action which was activating my front headlights
and putting my vehicle in gear. After checking the road for
additional motorists traveling in either lane, I determined
the roadway was clear. Thereafter, I made a left hand turn
out of the George Family Development Center and entered
the inside lane on Austin Street.
 
          8.       Once I entered Austin St., I activated my emergency lights
and accelerated towards the speeding motorist to make the
traffic stop.
 
          9.       Given the conditions of the road at the time and the
presence and number of other vehicles traveling on the
roadway, I determined it was necessary and appropriate to
increase my speed and activate my emergency lights as I
closed the distance between myself and the speeding
motorcyclist. At the time, given the circumstances, I used
my discretion in determining whether it was appropriate to
activate my audible sirens and decided it was not
appropriate at the time for a number of reasons.
 
          . . . 
 
          11.     At that time, I recognized before I initiated my response,
that there was some risk, as there always is, inherent
anytime a police officer makes the decision to increase his
speed and not activate the audible signals while making a
traffic stop. Indeed, this case was no exception. I
recognized the possibility existed that if I increased my
speed, my vehicle could increase the risk of a collision
causing property damage and/or injury to another driver,
bystander or property owner. I considered each of these
potential risks before I initiated the pursuit and continually
reevaluated them up until the time of the accident.
 
          12.     In my opinion, considering the fact that the motorcyclist
was speeding on a two lane road at night, without the use
of a functioning front light, coupled with my knowledge of
Austin St., and the traffic and pedestrian conditions, the
potential danger posed by my actions were far less than the
danger posed by the speeding motorist given the danger he
posed to himself, other motorists and the property around
him. Additionally, after evaluating the potential risks
inherent in my decision not to activate the audible signals
on my police vehicle, I determined that the safest manner
to stop the speeding motorcyclist was to activate my visual
emergency lights to alert him of my presence before
activating my audible sirens. Indeed, based on my training
and experience, it is often better under certain
circumstances, and this would be one of those
circumstances, to first activate visual emergency lights
before activating audible sirens. 
 
          . . . 
 
          14.     Additionally, Austin St. is a relatively straight road. 
Moreover, before initiating the pursuit, I ensured there
were no cars around me. At the time, I did not perceive
any risk associated with increasing my speed or not
activating my audible signals posed to the traffic on Austin
St. or any other civilians, property owners or drivers close
to my location.
 
          . . . 
 
          16.     From my point of view at the time, I did not engage in
conduct I believe posed a likelihood of serious injury to
anyone or that posed serious property damage to any
property owners or civilians. Therefore, a reasonably
prudent police officer, under similar circumstances as those
I faced, would likely have reached the same decision that
I reached based upon my perception of the facts at the time. 
Accordingly, based upon my perception of the facts at the
time, I believe a reasonably prudent police officer would
have reached the same conclusion I did, when assessing the
need for a rapid response and the risk of the course of
action I undertook. That is, the need to stop a speeding
motorcyclist whose front light was not functioning and
driving at an increased rate of speed without activating my
audible signals outweighed any risk of potential or
perceived harm to the public.

          On appeal, Rodriguez argues that because Sergeant Elliott’s affidavit does not
state whether he had any other alternatives to pursuit, he did not “substantiate his
claim of good faith.” Alternatively, Rodriguez argues that her deposition testimony
controverts Sergeant Elliott’s assertions that “(1) the motorcycle in question did not
have a functioning headlight, and (2) that [Sergeant Elliott’s emergency lights were
on at the time of the accident.” 
          In University of Houston v. Clark, the supreme court held that the requirement
that the officer consider available alternatives was met in Officer Stewart’s case by
his testimony that he was unable to get close enough to read the fleeing suspect’s
license plate. 38 S.W.3d at 585. The Clark court stated, “The need to immediately
apprehend a suspect depends, among other things, on whether the suspect could be
apprehended at a later time, i.e., whether there is an alternative to pursuing the
suspect that would achieve a comparable result.” The court further stated, “officers
should be required to recognize reasonable alternatives to pursuit, and to justify their
decisions to pursue when those alternatives exist by showing that the need to pursue
nevertheless outweighed the risks. Requiring officers to assess alternatives insures
that public safety is not ‘thrown to the winds in the heat of the chase.’” Id. (quoting
Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992)). 
          By contrast, in Ener v. Thomas,


 the supreme court stated, “Nowhere in his
affidavit does Ener mention facts to show that he assessed whether there were any
alternatives to pursuit. Ener does not mention the viability of identifying the suspect
and apprehending him later or any other alternative.” Id. at 587. The court concluded
that “Without assessing the availability of alternatives, Ener did not have a suitable
basis for concluding that a reasonable officer in his position ‘could have believed that
the need to immediately apprehend the suspect outweighed a clear risk of harm to the
public in continuing the pursuit.’” Id. (quoting Chambers v. City of Lancaster, 883
S.W.2d 650, 656 (Tex. 1994)). Therefore, the supreme court agreed with the court
of appeals that the officer’s affidavit did not substantiate his claim of good faith. Id.
at 588.
          Unlike Ener, Sergeant Elliott’s affidavit properly assessed the need and risk
factors articulated in Wadewitz and refined in Clark. Specifically, Sergeant Elliot
testified that he saw a motorcyclist driving at a high rate of speed at night without a
headlight, posing a danger to himself, other motorists, and the property around him,
requiring a “rapid response.” He testified that he determined it was necessary and
appropriate to accelerate toward the motorcyclist based on the conditions of the road
and the presence and number of other vehicles traveling on the roadway. He further
testified that he recognized the possibility that if he increased his speed, the risk that
his vehicle could cause an accident also increased, property damage, or injury to
another driver, bystander or property owner also increased, and that he considered
each of these potential risks and continued to re-evaluate each risk up until the
accident. He considered the alternative of not pursuing the speeding motorist and
also of activating his audible siren as well as his visual emergency lights to alert the
speeding motorcyclist of his presence. He determined, on the basis of his knowledge
of the street, the traffic and pedestrian conditions, and the time of day, and after
evaluating the risks, the potential danger of pursuing the motorist was far less than
the danger posed by the speeding motorist and himself and that “the safest manner to
stop the speeding motorcyclist was to activate my visual emergency lights.” He
concluded that he did not believe that he engaged in conduct that posed a likelihood
of serious injury to anyone and that a reasonably prudent police officer, under similar
circumstances, would have reached the same decision that he did. Furthermore,
Lieutenant Teague’s affidavit supported Sergeant Elliott’s affidavit and did not
controvert anything about Sergeant Elliott’s conduct.
          We conclude that Sergeant Elliott’s affidavit took all of the Wadewitz factors
into account and thus affirmatively established his good faith as a matter of law. See
Id. at 584–87. The burden thus shifted to Rodriguez to show that “no reasonable
person in the officer’s position could have thought that the facts justified the officer’s
acts.” Id. at 581. On appeal, Rodriguez does not make any argument that an officer
in Sergeant Elliott’s position would not have thought that the facts justified the
officer’s acts. Rather, Rodriguez primarily attacks Sergeant Elliott’s affidavit as not
establishing good faith. Because we have concluded that Sergeant Elliott’s affidavit
proves good faith as a matter of law, we likewise conclude that Rodriguez has not met
her burden.
          At the end of her brief, Rodriguez argues that Rodriguez’s “deposition
testimony controverts Officer Elliot’s affidavit testimony, and therefore raises fact
issues for a jury. More specifically, Plaintiff controverts Officer Elliott’s assertions
that (1) the motorcycle in question did not have a functioning headlight and (2) that
Officer Elliott’s emergency lights were on at the time of the accident.” As
Rodriguez’s argument does not address the need and risk factors in Wadewitz, it is
insufficient to controvert Sergeant Elliott’s proof on good faith. See Clark, 38
S.W.3d at 587 (stating that because plaintiff’s expert’s “testimony on good faith is not
substantiated with reference to each aspect of the need and risk balancing test, it is
conclusory and is insufficient to controvert the defendant’s proof on good faith”).
Conclusion
          We reverse the trial court’s order denying the City of Richmond’s plea to the
jurisdiction. We render judgment that the City of Richmond’s plea to the jurisdiction
is granted and that Rodriguez’s claims are dismissed.
 



                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Jennings, Keyes, and Higley.